Good morning, your honors. Mark Greenberg for David Ruezga. I was wondering if I could reserve five minutes for rebuttal. I'm going to speak primarily to the issue of failure to request an instruction on antecedent violence and threats, because I think in a way that's the most important deficiency in this case. The failure to give that instruction, I think, truly distorted the law in the case and distorted the way the jurors viewed the facts of this case. Now, if we return to the State court opinion, which asserts, I think, sidesteps the issue by asserting that the evidence here did not present a question of whether Mr. Ruzga acted too soon or too harshly, but it presented an issue of whether he acted in self-defense at all, is, with all due respect to the Sixth District Court of Appeal, a glib sort of sophistry on the facts of this case. I mean, whether the defendant acts in self-defense or not depends very much on when he acts. If he acts too soon, that is, if he acts before there's an imminent danger or a reasonable perception of an imminent danger, then it's a criminal homicide. If he acts when there's a reasonable perception of an imminent danger, then there is no criminal homicide. So to say that it's a question of whether there's self-defense or not, as I say, is a glib evasion of the real issue in this case, because the issue in this case was whether Mr. Ruzga acted when there was a reasonable perception of the danger being imminent. And the question of whether there was a reasonable perception of when the danger was imminent very much depended on whether the jury was properly instructed in how to consider this earlier event that happened only a few months before. There was some factual dispute about its contours, but the question is, it wasn't a violent attack. It was a violent attack on Mr. Ruzga. According to the defense, it was a violent attack on Mr. Ruzga in which Antonio Chacon or his brother made the statement, go get a gun. Mr. Ruzga's brother himself was severely beaten in this incident. So we know do we do we know exactly what issues were put to the jury by the instructions? What range of possible offenses before the jury? Yeah. There were instructions here. There were instructions here on attempted murder. There were instructions here on, I assume I'm answering, addressing your Court's concern, the Court's concern, Your Honor's concern. He was charged with three counts of attempted murder. The instructions, he also got instructions on a lesser-included offense of attempted voluntary manslaughter predicated on imperfect self-defense. Now, imperfect self-defense is an actual, if unreasonable, belief in the need for self-defense. But that, too, still requires an actual subjective perception that the danger is imminent. The defendant's not allowed to make a mistake of law that he can somehow kill his opponent or attempt to kill his opponent a day before the danger is imminent. The mistake has to be a sincere belief in the right to perfect self-defense. So that was the range of issues presented to the juries. There were instructions given on self-defense. The court of appeal would be right that the question is whether the question if there was not enough evidence to even instruct on self-defense, that would be the question presented. The defense would claim there was enough evidence. The defendant, the government would claim there isn't enough evidence. But clearly here, there was enough evidence. The only question is that further qualifying principle concerning antecedent threats and violence, which allows the defendant to act more quickly and more harshly. It gives the jury the legal structure on which to assess whether the defendant's perceptions were reasonable, whether his actions were reasonable, and ultimately the legal conclusion of whether he acted in self-defense. Now, when you look at it from the perspective of the actual facts in this case, the undisputed facts, the immediate ñ in the immediate incident, Mr. Rusca leaves ñ there's some sort of verbal exchange and staring and sort of a truculent posturing between Mr. Rusca and the other three men at this gas station. Mr. Rusca leaves the gas station. There's no evidence that he knows where the other party is going. He goes his merry way. He gets on. He starts merging onto the freeway, the 101 freeway from the Lawrence Expressway. After he leaves, then the other group takes off in their red Mustang. He's in an old clunky automobile. They start overtaking him. They move to pass him in a lane that's sort of merging onto the freeway and being reduced to one lane. And then they decide to slow down and pull even to him. They're faster than him. They pull even to him. There's more gesturing. Now, the question is, does Mr. Rusca then have a reasonable perception of imminent danger? Maybe, maybe not. But if you broaden the consideration by telling the jury that they can on that issue consider the antecedent threats and violence, this July 2000 incident in which Mr. Rusca, the defense, said go get a gun, then the conclusion would very well have been different. For the State court of appeal to have ignored these facts, in other words, even the prosecution witnesses said that they pulled, that they were trying to overtake him, that they went past him, and then they pulled back. Now, maybe Mr. Rusca was wrong, but the question is, was his perception reasonable? And very much that contributes to that question is this evidence of antecedent threats. Without that instruction, then the jury is thrown back to what the prosecutor said. The prosecutor said, in his closing argument, this case is about what happened on October 15, 2000. You heard evidence as to a confrontation on July, in July 2000, but that confrontation makes no difference. Whether there was self-defense or not depends on what happened on that freeway, on merging on that freeway on October 15. Well, that is wrong. What this case hinges on for purposes of assessing whether there was self-defense or not is not only what happened October 15, which very much looks like the other group is the aggressor for purposes of self-defense, but also what happened in July 2000 in which there was a violent confrontation and how that affected both Mr. Rusca's subjective perceptions and what the reasonable perceptions could be. Now, as I say, it seems to me that's the most important deficiency in the trial. The Attorney General sort of tries to minimize the problem of this. Well, is it for us to decide whether or not it was, that it would have, it was prejudicial? Well, it is under the, it is, yes, it is under the Strickland. In other words, the assessment of prejudice comes under the. Isn't this a habeas case? This is a habeas case. This is a habeas case, but the question is whether Strickland itself was applied unreasonably. Now, the prejudice assessment in Strickland is incorporated into the, it's the second prong of the error itself, so that it seems to me that if you're determining whether Strickland was applied, then the question is whether the prejudice prong of Strickland was applied reasonably or not. Well, why did the State court say that it was not prejudicial? They said it was not prejudicial because the way they cast the case is it made it, they made it appear that as a matter of law, Mr. Ruska had no real claim of self-defense. The facts were so outside the realm of the possibility of self-defense that it couldn't possibly be prejudicial not to have this instruction. What? And that was unreasonable because? Yes. That was unreasonable because it did not even mention or take into account the facts that Mr. Ruska in the immediate situation left the gas station first. There was no evidence that he knew where the other party was going. They left after he did. They took the same route he did. They overtook to pass him. That's what was argued to the jury. No. This was not argued to the jury.  Now, the reason why it was not argued to the jury is in terms of Mr. Ruska's subjective, in other words, the motive of the Chaconne group to be aggressors against Mr. Ruska. But the way the antecedent threats and violence has to work is the jury has to consider it on Mr. Ruska's state of mind, not as a motive for the other group, but his state of mind as to what's going on. Now, it wasn't really presented in that. The instruction wasn't given to allow counsel to make that argument. In fact, the absence of the instruction allowed the prosecutor to make the opposite argument, that the July 2000 incident had nothing to do with the issue of self-defense. The only thing that was pertinent to the issue of self-defense was the October 2000 incident, that is, the immediate shooting. So that is the problem, and that is a serious problem in this case because the jury did not assess whether the jury was not given the proper instructions to assess self-defense. The failure to ask for that instruction that would have made it proper was below the level of competence of a reasonably competent attorney, and on the second prong of Strickland, it was clearly prejudicial, so much so that the State court of appeals assessment that it was reasonable or that it was not prejudicial is simply unreasonable. Again, it makes no mention of the fact that the other party, to all objective appearances, was the aggressor. They didn't have to slow down as they were merging onto the freeway. They slowed down to pull next to him. They had the faster car. They were on their way. They slowed down, and to me that, I think to any objective observer, that clearly raises the question of self-defense. Now, the further question is, was it actually self-defense? Was the perception of imminent danger reasonable or not? Not whether there was self-defense at all. Again, if the court of appeal were right, then the question would be whether there was even or should be any instruction on self-defense. As far as the other issues are concerned, there are several kinds of things. Kennedy. You wanted to take five minutes. You're down to three and a half. Well, let me take my three and a half then, Your Honors. And subject to rebuttal, I'll prepare to submit. Thank you. Good morning. Juliet Haley appearing for the appellee, Yates. Let's just begin clearly with that this jury was completely instructed. This is not a case where the trial court failed to instruct on a general principle of law. The jury was completely instructed on self-defense, on imperfect self-defense, and all of the different limitations on defense. What we're talking about is a pinpoint instruction that did not become a calgic instruction even until after the trial occurred. So what the complaint is, is that counsel did not ask the court to tie a particular piece of evidence to an instruction, I mean, an instruction to do that. So I just want to, I mean, because. But the evidence was there. Yeah. The evidence, of course, was there. It was argued. And the theory of self-defense was there. Absolutely. And I think that counsel misunderstands the court of appeals analysis. What the court of appeals is saying is that what this case was about, in these antecedent cases, it's a situation where the victim does something seemingly, to everybody else, benign. Yet the defendant reacts with violence. In the major case, the victim walked into a bar, and the defendant just pulled out his gun and shot him. And the jury didn't know that this guy had been coming after the defendant over and over and over and over again, carrying a gun, all these things. So what appeared to be benign to everybody else was not benign to the defendant. And therefore, what the antecedent threat instruction did, and that jury came back with voluntary manslaughter, right? That it was unreasonable. And what the court said was, if you had given this antecedent, if counsel had asked for that, because he asked for it, counsel said, please, let me have this instruction. And what he said was it's prejudicial because counsel wants this instruction. It's our theory of the defense is that it appears benign, but it's not because of this guy's history. And the jury would have come back probably with complete defense, because it would have been reasonable as opposed to unreasonable. That's not this case. Mr. Wes's testimony is that the defendants were stalking him, that he pulled out of the driveway, that they came in, they bumped him, and then they again rear-ended him before he even got on the freeway, and that when they came up along next to him, they started trying to ram his car by swerving into him off into the cement barrier, that he had his 4-year-old that nobody else saw but apparently on the floor, and he was worried for his life. His car was getting – he was being forced off the road into a cement barrier. His life was at risk, according to him. That's not a benign action. He said, I was afraid of these guys. The reason I was carrying the gun was because I was afraid of these guys because of this prior incident, which was argued extensively. That's what went to whether, even if it was not – and he also said he thought he saw a gun. So defense counsel tried to argue that either it was actual and reasonable because if you believe his testimony that he's getting rammed off and you believe his testimony that he thought he saw a gun, he acted actually in self-defense. There's not a question here that he acted too quickly, that he – if this is happening, he is entitled to self-defense. And the antecedent – I mean, the prior incident was argued by counsel that this is why he carried a gun. This is why he was scared of these guys. This is why he – his perceptions were distorted by thinking that the guy had a gun. So maybe he wasn't absolutely reasonable. You know, and it's a fine line where counsel's trying to both give the jury an option if they believe his testimony of this client versus if they don't quite believe it. And they had those – both of those opportunities. So that's what the court of appeals is talking about, why there was no prejudice in this. So I don't know if there's any questions, but I mean, I think that – and yet, as you pointed out, the question here is whether or not the State court of appeal was unreasonable in concluding that counsel was not ineffective. Okay. Any questions? There don't appear to be any. All right. Thank you. Your Honor, I count five unpublished – or five published California decisions that reversed convictions before Calgic, before this instruction appeared in Calgic for failure to request this instruction. Now, you can dismiss it as a pinpoint instruction, but this is one of the few pinpoint instructions that California courts ever reverse convictions on. To reverse five of them is remarkable, and the courts say, this is an instruction that truly fills a gap in the self-defense instructions. This is all before it appeared in Calgic. Now, regarding – regarding what happened in particular in this case, in this case, to say – well, no, I should back up. To characterize the law that this instruction applies only when, to the objective observer, there is no grounds to perceive whether the defendant had a grounds for self-defense is wrong. Now, the case she cites, that was the factual situation. There's another case. If you look at the Moore case, that's the Cal second case, the Supreme Court case. That's a situation in a woman was going through a divorce. Her husband called saying he was coming over. She said, don't come over. He said, I'm coming over. She went to get her gun. She had her gun at the ready when he burst in the door. He shot her, or she shot him as he burst in the door. Well, I mean, that's an equivocal situation. Did she act when the threat was imminent, or didn't she act when the threat was imminent? It could go either way. The point is this instruction, along with evidence of facts of antecedent threats and violence, could very well make a difference. And if the evidence is strong enough, it will make a difference. Now, that's the situation here. It doesn't matter if the jury or the prosecution, I should say, disbelieves Mr. Rueska as to what happened before he got to the gas station. After he left the gas station, he was on his way. There's no evidence that he's telling them, come on, fellas, follow me and we'll shoot it out. None whatsoever. He's on his way onto the freeway. Did they swerve into him? Well, if you're merging onto the freeway in a diminishing lane and somebody's sort of trying to pass you and then pulls back, it could very well look like that party is swerving into you. The fact of the matter is, is that there was at least a colorable claim here of self-defense that was not properly assessed because there was not this instruction, which the California courts have found crucial to fill an omission. And with that, I'm prepared to submit it, Your Honors. Thank you. Thank you. This just argued is submitted for decision.
judges: Schroeder, Reinhardt, Pollak